IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH M. PACETTI<br>  Plaintiff, | §<br>§<br>§ | |
| VS. | § | Case No. 4:15-cv-237 |
| | § | |
| BNSF RAILWAY COMPANY<br>  Defendant. | §<br>§<br>§ | |

## COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

   KENNETH M. PACETTI, Plaintiff, brings this action against BNSF RAILWAY COMPANY, Defendant. Plaintiff offers the following:

### A. PARTIES

1. Plaintiff Kenneth M. Pacetti ("Pacetti" or "Plaintiff") was employed as a railroad worker by Defendant. He is a citizen of the United States residing in the State of Texas.

2. Defendant, BNSF Railway Company ("BNSF" or "Defendant"), is a Delaware corporation doing business in and subject to personal jurisdiction in the Southern District of Texas in that it has regular and systematic contacts with this District. Defendant BNSF Railway Company can be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201, or by serving its agent, Jeffrey R. Moreland, Corporate Secretary, 2500 Lou Menk Drive, Ft. Worth, Texas 76131-2828.

### B. JURISDICTION

3. This Court has subject matter jurisdiction as the action arises under the Federal Railroad Safety Act, 49 U.S.C. §20109(d)(3) (the "FRSA").

4. On October 27, 2011, Pacetti filed a FRSA whistleblower complaint with OSHA as per 49 U.S.C. § 20109. As the Secretary of Labor has not issued a final decision within 210 days after the filing of that complaint, Pacetti brings this original action for de novo review in this United States District Court, which has jurisdiction over the action without regard to the amount in controversy. *Id.,* 49 U.S.C. §20109(d)(3).

### C. VENUE

5. Venue is proper in this matter per 28 U.S.C. §1391.  All or a substantial portion of the subject events occurred in the Southern District of Texas. Further, BNSF resides in and has regular and systematic contacts in this district.

### D. CAUSE OF ACTION - FRSA VIOLATIONS

6. Pacetti adopts by reference and re-alleges the sections above.

7. The FRSA prohibits a railroad from discharging, demoting, suspending, reprimanding, or in any other way discriminating against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done to notify, or attempt to notify, the railroad or the Secretary of Transportation of a work-related personal injury.

8. Pacetti will show by a preponderance of the evidence that his protected activities described herein were a contributing factor, which alone or in combination with other factors, in whole or in part, affected the outcome of BNSF's management decisions complained of herein.  BNSF will not be able to establish by clear and convincing evidence that it would have taken the same actions in the absence of Pacetti's protected activities.

9. At all pertinent times, BNSF was a common carrier by rail engaged in interstate commerce through and between the states.

10. At all pertinent times, BNSF owned, managed, maintained, and used as a portion of its railroad system, a subdivision known as the Galveston Subdivision of its Gulf Division.

11. At all pertinent times, Pacetti's assigned home terminal was BNSF's Galveston Subdivision.

12. On or about June 19, 2006, Pacetti hired on with BNSF's Transportation Department as a trainman.  He first worked as a brakeman, then as a switchman, and then as a conductor.

13. On January 3, 2011, Pacetti began BNSF's Locomotive Engineer's Training Program ("LETP").  While working as a locomotive engineer trainee, Pacetti was assigned to make "turnaround" runs between Alvin/Pearland, Texas and Temple, Texas.

14. On April 30, 2011, at approximately 1:00 o'clock a.m., Pacetti sustained an on-the-job injury due to unsafe working conditions at BNSF's Temple Yard.  Hoping he had only sprained his ankle, Pacetti boarded his train and traveled back to Pearland, Texas. The

train arrived in Pearland on the afternoon of April 30, 2011.  During the long train ride back to Pearland, Pacetti realized he needed medical attention.  He went to an emergency room that afternoon in Houston; the ER physicians diagnosed a broken left fibula.  Later more accurately diagnosed by a orthopedic surgeon as a left transmalleolar fracture, Pacetti underwent surgery with hardware installation and two subsequent surgeries.

15. After his discharge from the ER, Pacetti telephoned his supervisor, Eric Jones, BNSF's Road Foreman of Engines.  Pacetti then notified Jones of his injury, and also reported the unsafe working conditions which caused the injury.  Pacetti also telephonically reported to a BNSF management official from the Temple Yard, believed to be BNSF Terminal Superintendent Greg Woolen.  Pacetti notified this BNSF management official of the unsafe working conditions which caused his injury.  Pacetti's initial telephonic reports to these BNSF officials constituted protected activities under the FRSA.

16. In response to Pacetti's FRSA-protected activity of reporting his April 30, 2011 injuries, BNSF embarked upon a course of discriminatory, retaliatory and adverse employment actions against him.  BNSF's adverse actions were based in whole or in part upon Pacetti's reporting of his injuries and the hazardous safety conditions. BNSF undertook its course of adverse actions knowing Pacetti had engaged in FRSA-protected activities.

17. On May 2, 2011, BNSF officials required Pacetti, while heavily medicated, to drive from his home near Jersey Village, Texas to the Pearland terminal.  Ushered into the office of BNSF's Terminal Manager, Pacetti met with Boemio and Eric Jones.  In their presence, they required Pacetti to complete a BNSF Employee Personal Injury Report.  Despite BNSF's oppressive tactics, Pacetti engaged in a FRSA-protected activity, reporting his broken fibula and BNSF's unsafe working conditions at the Temple Yard.  BNSF's materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

18. On or about September 28, 2011, before Pacetti returned to work from his medical leave, he learned that BNSF was "disciplining" him for reporting his injury.  BNSF retaliated against Pacetti by utilizing its Policy for Employee Performance Accountability ("PEPA"), its Employee Review Process ("ERP"), and by assessing 40 Personal Performance Index Points ("PPI") against Pacetti per its Point Distribution Policy.  Ordinarily, BNSF disciplined its transportation department employees by making written

charges, then allowing the railroader to respond, followed by a formal investigation hearing. Here, BNSF did not charge Pacetti with violating any rules which would merit assessing him any discipline. Unaware he had being subjected to disciplinary action, Pacetti was not allowed an opportunity to respond. He was not allowed to defend himself at a formal hearing.

19. Having suffered a FRA-reportable injury placed Pacetti in disciplinary jeopardy. BNSF rated the reporting of an on-the-job injury as the worst of infractions on its Point Distribution chart. Under BNSF's Point Distribution Policy, a FRA-reportable injury merited an award of 40 PPI points. BNSF assigned 40 PPI points against Pacetti, miring him in BNSF's Employee Review Process (ERP). By blacklisting Pacetti, BNSF subjected him to increased scrutiny, inspections, and derision by BNSF management. BNSF intimidated Pacetti with "coaching" sessions with managers, with unfair tests, with threats of termination, and with derisive comments and rumors spread by supervisors to Pacetti's peers and trainers. BNSF's materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

20. Before returning to work, on October 27, 2011, Pacetti filed his FRSA whistleblower complaint with OSHA.

21. On October 19, 2011, after two surgeries and almost seven months off of work, Pacetti's orthopedic surgeon cleared him to return to work as a locomotive engineer trainee. BNSF refused to allow Pacetti to return to work until November 28, 2011, leaving him without pay or benefits for over a month. BNSF's materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

22. After he had returned to work, on February 6, 2012, Pacetti filed a lawsuit against BNSF arising under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §51, et seq [No. 2012-07427; *Kenneth M. Pacetti v. BNSF Railway Company;* in the 190th Civil District Court, Harris County, Texas]. On March 16, 2012, BNSF filed its answer in the FELA lawsuit.

23. On returning to work, Pacetti resumed on-the-job training and classroom training in BNSF's LETP. He was sent to Kansas to take LETP examinations. Due at least in part to extenuating circumstances of which BNSF was aware, Pacetti failed two LETP examinations on April 13, 2012. Under the custom and course of dealings between

BNSF and Pacetti's union, he should have been permitted up to 90 days to retake these tests. However, BNSF again discriminated against Pacetti, requiring him to re-take the LETP exams less than 6 weeks later. BNSF's materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

24. On May 21, 2012, BNSF gave Pacetti a second LETP exam with questions not correlated to his BNSF study guide. Pacetti failed that LETP exam. Rather than allowing Pacetti to take an exam correlated to his study guide, BNSF denied him engineer certification and terminated him as a conductor. BSNF's materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

25. BNSF now claims that an engineer trainee's failing a second LETP exam results in automatic termination. BNSF refused to allow Pacetti to retake an exam more than twice, while it has allowed other engineer trainees to take LETP examinations more than twice. These materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

26. Pacetti asked to return to work as a trainman (conductor). BNSF refused, claiming it does not allow engineer trainees failing the LETP to return to work as a trainmen. However, BNSF has allowed other engineer trainees to return to work as trainmen. These materially adverse actions were based in whole or in part upon Pacetti's engaging in protected activities.

27. BNSF's materially adverse actions caused Pacetti to lose wages and benefits in the past. Pacetti will in reasonable probability continue to lose wages and/or earnings capacity, as well as benefits, for the remainder of his working life.

28. BNSF's materially adverse actions caused Pacetti to suffer from emotional distress in the past. Pacetti will likely continue to so suffer for the remainder of his life.

29. BNSF's materially adverse actions caused Pacetti to suffer from mental anguish in the past. Pacetti will likely continue to so suffer for the remainder of his life.

30. Under the Federal Railroad Safety Act, 49 U.S.C. §20109(d)(4), Pacetti seeks punitive damages. BNSF's callous disregard and conscious indifference of the FRSA in this case and its similar retaliatory conduct is occurring systemwide. The purpose of filing this complaint is not only to make Pacetti whole, and to protect him from any future retaliation, but also to discourage BNSF from continuing to initiate materially adverse

employment actions against its employees for reporting personal injuries caused by unsafe working conditions.

### E. CONDITIONS PRECEDENT

31. Pacetti adopts by reference and re-alleges the sections above.
32. All conditions precedent to filing this original action have been satisfied.
33. On October 27, 2011, Pacetti filed a FRSA Complaint with the Secretary of Labor's Houston Area Office, within 180 days from the date that Pacetti first learned that BNSF had violated the FRSA as described above. The OSHA Whistleblower Office commenced its investigation and Pacetti fully cooperated with OSHA's investigation. Over 210 days have passed since Pacetti filed his complaint with OSHA and OSHA has not issued a final decision.
34. Per the FRSA's kick-out provision, brings this de novo action. 49 U.S.C. §20109(d)(3), on December 16, 2014, Pacetti notified OSHA, the Office of Administrative Law Judges, and BNSF that he intended to exercise his statutory right to file a lawsuit in federal district court.

### F. JURY DEMAND

35. Plaintiff demands a trial by jury.

### G. RELIEF SOUGHT

36. Pacetti adopts by reference and re-alleges the sections above.
37. In order to be made whole, and to encourage other railroad employees to freely report all injuries without fear of any retaliation, thereby ensuring that the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, Pacetti demands a judgment under the FRSA for all relief necessary to make him whole and to send a message to BNSF that its discriminatory conduct will not be tolerated, including, but not limited to:
    (a) Damages for economic losses caused by BNSF's conduct.
    (b) Damages for back wages, with interest as per 26 U.S.C. §6621.
    (c) Damages for future loss of earnings/earnings capacity.
    (d) Damages for emotional distress in the past and the future.
    (e) Damages for mental anguish in the past and the future.

(f) An award of punitive damages in the maximum amount allowed by law.

(g) An award of pre-judgment interest as allowed by law at the maximum legal rate.

(h) An award of post-judgment interest as allowed by law at the maximum legal rate.

(i) An order that BNSF expunge all adverse references from Pacetti's personnel records relating to it adverse employment actions, including PEPA, PPI points and ERP-related references in any way related to reporting of on-the-job injuries, and to not make any negative references relating to same in any future requests for craft transfer, promotion, and/or employment references, and further:

   i. An order that BNSF remove 40 points, and any other points, assessed on Pacetti's "index score" as a result of his protected activities concerning his work-related injuries.

   ii. An order that BNSF not force Pacetti to engage in its ERP as a result of his protected activities concerning his work-related injuries.

   iii. An order that BNSF remove Pacetti from its "blacklist" or AB" List.

(j) As an alternative to an award of future loss of wages and benefits, Pacetti seeks an order of reinstatement with all seniority and benefits restored, from May 21, 2012 to the present, either as an engineer trainee being permitted to attend the Locomotive Engineer Training Program and take the LETP examinations as administered to the other students, or alternatively, as a conductor.

(k) An award of Pacetti's litigation costs, expert witness fees, and reasonable attorney fees.

(l) All other relief to which Pacetti may be entitled.

Respectfully submitted,

*s/ John G. Zgourides*
JOHN G. ZGOURIDES
Texas Bar No.: 22262020
9595 Six Pines, Suite 8210
The Woodlands, TX 77380
(713) 876-7001 Telephone
(281) 374-4646 Facsimile
john@zgourides.com E-mail

ATTORNEY FOR PLAINTIFF